UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Case No. 3:11-CR-086 JD |
| | ) | |
| OMAR LEWIS | ) | |

**MEMORANDUM OPINION AND ORDER**

On July 14, 2011, Omar Lewis was charged by indictment with four cocaine-related violations of 21 U.S.C. § 841(a)(1) and with possessing a firearm as a felon in violation of 21 U.S.C. § 922(g)(1). [DE 1]. On November 17, 2011, Mr. Lewis filed a motion to suppress evidence seized from his residence pursuant to a search warrant obtained by police investigating narcotic activity in the area. [DE 31]. In it, Mr. Lewis argues that the warrant is invalid because the police officers testified falsely before the issuing judge. On December 8, 2011, the government filed a response. [DE 32]. On December 15, 2011, Mr. Lewis filed his reply, and the motion is now before the court. Because Mr. Lewis has not made a "substantial preliminary showing" that police officers obtained the search warrant by intentionally or recklessly including materially false information in their testimony before the judge, the court will not order a *Franks* hearing and denies the motion to suppress. *Franks v. Delaware*, 438 U.S. 154, 155-156 (1978).

**BACKGROUND**

In April of 2011, Michigan City Narcotics officers and DEA agents undertook a joint investigation of narcotic activity in the area of 11th Street and Washington Street in Michigan City. Police used confidential informants ("CIs") and undercover officers to make six purchases of cocaine base in the area, and the process was almost identical each time. The undercover or the CI would call a known phone number and order a quantity of cocaine base with a price of $50-100 in United States currency. The CI and the undercover would then proceed to the area of 11th and

Washington Street to meet the drug runner. The runner never had the narcotics on his person, but would take the money from the CI or undercover and walk down an alley off of Washington Street. After two or three minutes, the runner would reappear and deliver the cocaine base to the CI and undercover. On all but the last buy – when undercover officer Justin Frever proceeded to the transaction without an accompanying CI – this was the procedure. The runner for two of the buys in this sequence, occurring on April 26 and May 5, 2011, was arrested and identified as Darwin Van. The runner for the other four buys, occurring on April 26 (twice), April 27, and May 6, 2011, was identified as Daryl Smith. As soon as Mr. Smith completed the May 6, 2011, drug sale to undercover Officer Frever, officers other than Frever took him into custody.

Mr. Smith was interviewed following his arrest, and the parties dispute what information he conveyed. According to the government, Smith admitted to acquiring the cocaine base he sold from the defendant, Omar Lewis, at a two-story tan house off of the alley from Washington Street. According to the defense, Smith made no such admission. According to the government, the interviewing officers – Officer Drake and DEA Agent Ritchie – drove Smith into the alley and Smith pointed out the house from which he obtained the cocaine base. According to the defense, this never happened. In any case, the officers themselves did not leave the car to examine the house because they feared it would jeopardize the investigation. They took a photograph of the home from the alleyway, but could not find any address numbers.

Officer Frever and an Officer Legros appeared with the prosecutor in front of a judge to seek a search warrant for the two-story tan house in the alleyway. Officer Frever testified as to the history of the investigation and described the structure in question as "a two-story, tan-sided structure that sits on the same lot" behind 1105 or 1007 Washington Street. He testified that the house was surrounded by a fence and that Mr. Smith had confirmed that he entered the house to obtain the

2

cocaine for the controlled transactions. But Officer Frever also testified that Smith had been entering the house through the rear door facing the alley, a statement which all parties now agree was inaccurate. Officer Legros, in turn, testified that the CIs had reported Omar Lewis was distributing cocaine and cocaine base from his residence. A warrant was issued based on the officers' testimony. Officers executing the warrant found cocaine base, packaging materials and a firearm in the residence.

In his motion to suppress, Mr. Lewis argues that the search warrant for his residence was invalid because the officers' testimony to the court included misrepresentations. Specifically, he claims the officers misrepresented the facts when they told the judge: (1) that the house was fenced in [DE 31 at 2]; (2) that the house had a rear door facing the alley [DE 31 at 2];[1] (3) that the runner, Smith, (defense counsel uses the label "target" to refer to the runners, not Mr. Lewis) entered the house using the rear door, which was actually blocked at the time [DE 31 at 2-3]; (4) that the runner *said* he used the rear door [DE 31 at 3]; and (5) that the runner confirmed he entered the house [DE 31 at 3]. Mr. Lewis also makes a hearsay objection to Officer Legros's testimony before the issuing judge.

## DISCUSSION

**A.** *Franks* **Hearing**

"There is, of course, a presumption of validity with respect to the affidavit [or testimony] supporting a search warrant." *Franks v. Delaware*, 438 U.S. 154, 171 (1978). Nevertheless, "where the defendant makes a *substantial preliminary showing* that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant

---

[1] Mr. Lewis's brief states "There is no rear door facing the alley. The rear door which does exist . . ." [DE 31 at 2]. It is thus unclear whether he claims officers were wrong about the existence of a rear door, or about whether the runners used it, or both.

affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Id*. at 155-156 (emphasis added). "In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Id*. at 156.

The defendant's burden in the "preliminary showing" phase is significant. "To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Id*. at 171. "There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." *Id*. "They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons." *Id*. "Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." *Id*. In other words, a defendant's request for a *Franks* hearing must be supported by *real evidence*. Conclusory, self-serving statements are not enough. *United States v. Johnson*, 580 F.3d 666, 671 (7th Cir. 2009). Mr. Lewis has provided the court with nothing to substantiate his allegations. He has submitted no evidence with his motion or with his reply. He has not even suggested that, were the court to grant a hearing, he would introduce anything beyond the sort of conclusory argumentative statements contained in his briefs. Moreover, the government's response, in particular DE 32-2, appears to confirm many of the characteristics of the house represented by Officer Frever. Plainly, the defendant's preliminary showing – no showing at all – is not substantial enough to outweigh the presumption of validity accorded by *Franks* to the

testimony underlying the warrant.

The foregoing, alone, is reason enough to deny the motion without a hearing. But because the government has conceded that Officer Frever testified erroneously when he told the issuing court that the runner, Daryl Smith, entered the structure through the rear door, the court considers the falsity of that particular statement sufficiently demonstrated. Still, to merit a *Franks* hearing, Mr. Lewis would have to make a substantial preliminary showing that the false statement in question was made knowingly and intentionally, or with reckless disregard for the truth, and that it was necessary to the finding of probable cause. 438 U.S. at 155-156. Mr. Lewis has not done so. Beyond conclusory allegations, he does nothing to show that the statement was a lie or made with reckless disregard for the truth as opposed to the product of negligence or innocent mistake. *See United States v. Butler*, 594 F.3d 955 (8th Cir. 2010). Furthermore, probable cause to issue the warrant is not defeated because of the falsity of this one particular representation. In short, Mr. Lewis has failed to meet his burden. No *Franks* hearing is warranted.

**B.     Hearsay Argument**

Mr. Lewis also seems to argue that the warrant is invalid because Officer Legros made hearsay statements to the judge when he relayed CI reports of drug trafficking activity at Mr. Lewis's residence. The Seventh Circuit has repeatedly held that a search warrant need not be based on first-hand observations. *See United States v. Hollingsworth*, 495 F.3d 795, 805 (7th Cir. 2007); *United States v. Lloyd*, 71 F.3d 1256, 1263 (7th Cir. 1995); *United States v. Chapman*, 954 F.2d 1352, 1370 (7th Cir. 1992). To the contrary, "hearsay may be the basis for issuance of [a] warrant 'so long as there [is] a substantial basis for crediting the hearsay.'" *United States v. Ventresca*, 380 U.S. 102, 108 (1965) (quoting *Jones v. United States*, 362 U.S. 257 at 272 (1960)). "[A]n affidavit may be based on hearsay information and need not reflect the direct personal observations of the

affiant,' so long as the magistrate is 'informed of some of the underlying circumstances' supporting the affiant's conclusions and his belief that any informant involved 'whose identity need not be disclosed was 'credible' or his information 'reliable.'" *Id.* (quoting *Aguilar v. State of Texas*, 378 U.S. 108, 114 (1964)). Officer Legros described the history and circumstances of his investigation of Omar Lewis, and he testified that he had worked with the CIs involved in the past and found them truthful and reliable. Mr. Lewis's hearsay challenge to the issuance of the warrant is meritless.

## CONCLUSION

Mr. Lewis has not made a substantial preliminary showing that any false statements knowingly and intentionally, or with reckless disregard for the truth, were made by the officers in their testimony before the judge, or that the allegedly false statements were necessary to the finding of probable cause. With respect to the one conceded false statement, he has failed to meet the test's remaining requirements. He is not entitled to a *Franks* hearing. Finally, Mr. Lewis's hearsay challenge to the warrant is without merit. The motion to suppress [DE 31] is DENIED.

SO ORDERED.

ENTERED:  January 23, 2012

/s/ JON E. DEGUILIO
Judge
United States District Court