UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Case No. 3:11-CR-086 JD |
| | ) |
| OMAR LEWIS | ) |

**OPINION & ORDER**

On July 14, 2011, Omar Lewis was charged by indictment with four cocaine-related violations of 21 U.S.C. § 841(a)(1) and with possessing a firearm as a felon in violation of 21 U.S.C. § 922(g)(1). [DE 1]. On November 17, 2011, Lewis filed a motion to suppress evidence seized from his residence pursuant to a search warrant obtained by police investigating narcotic activity in the area. [DE 31]. In it, Lewis argued that the warrant was invalid because the police officers testified falsely before the issuing judge. On December 8, 2011, the government filed a response. [DE 32]. On December 15, 2011, Lewis filed his reply. [DE 33]. On January 23, 2012, this court ruled on the motion. [DE 34]. Because Lewis had not made a "substantial preliminary showing" that police officers obtained the search warrant by intentionally or recklessly including materially false information in their testimony before the judge, the court declined to order a *Franks* hearing and denied the motion to suppress. *See Franks v. Delaware*, 438 U.S. 154, 155-156 (1978).

The case progressed, and on March 19, 2012, Lewis appeared before Magistrate Judge Nuechterlein to enter a plea of guilty under an agreement he had reached with the government. [DE 44; DE 48]. When the draft presentence investigation report was issued, Lewis found he faced a substantially higher guidelines sentencing range than he had anticipated, and he moved to withdraw his plea. Since this court had not yet accepted the Magistrate Judge's Report and Recommendation on the plea of guilty, Lewis's motion was granted. [DE 77]. The case began to progress towards trial once again. On August 10, 2012, defense counsel filed a second motion to suppress that was

virtually identical to the first, which had been denied. [DE 83]. In the weeks that followed, the court held a hearing and granted the defendant the opportunity to supplement or amend that motion. [DE 88; DE 93]. The net result is that the court is now prepared to rule on a new motion to suppress, filed September 26, 2012, and which has been fully briefed by the parties. [DE 96; DE 99; DE 100]. This order also disposes of the still-outstanding filing at DE 83.

Lewis raises several arguments for suppression, and each falls into one of four general categories: (1) general defects in the investigative process (this refers to Lewis's claim that the "targets" were paid with crack cocaine); (2) problems with the warrant (this includes the *Franks* issues and the argument that the warrant was not signed); (3) violations of third party constitutional rights (the argument that Daryl Smith was never read his *Miranda* rights); and (4) allegations of a warrantless search. None of these arguments is meritorious, and the motion to suppress is denied.

## FACTUAL BACKGROUND

The factual background is the same as it was with respect to the first motion to suppress in this case. In April of 2011, Michigan City Narcotics officers and DEA agents undertook a joint investigation of narcotic activity in the area of 11th Street and Washington Street in Michigan City. Police used confidential informants ("CIs") and undercover officers to make six purchases of cocaine base in the area, and the process was almost identical each time. The undercover or the CI would call a known phone number and order a quantity of cocaine base with a price of $50-100 in United States currency. The CI and the undercover would then proceed to the area of 11th and Washington Street to meet the drug runner, or "target." The runner never had the narcotics on his person, but would take the money from the CI or undercover and walk down an alley off of Washington Street. After two or three minutes, the runner would reappear and deliver the cocaine base to the CI and undercover. On all but the last buy – when undercover officer Justin Frever

proceeded to the transaction without an accompanying CI – this was the procedure. The runner for two of the buys in this sequence, occurring on April 26 and May 5, 2011, was arrested and identified as Darwin Van. The runner for the other four buys, occurring on April 26 (twice), April 27, and May 6, 2011, was identified as Daryl Smith. As soon as Mr. Smith completed the May 6, 2011, drug sale to undercover Officer Frever, officers other than Frever took him into custody.

Next, the officers began to question Smith, allegedly without first informing Smith of his *Miranda* rights. One of the officers drove Smith into the alleyway into which he always disappeared during transactions, and asked Smith to point out the house from which he obtained the drugs. Smith pointed out a two-story, tan-sided dwelling and confirmed that he entered that house to receive the drugs. That much is certain. There is some confusion, however, surrounding whether or not Smith told the officer he entered the house through the rear door. Lewis thinks Smith *did* tell that to the officer. [DE 96 at 3]. The government acknowledges that Officer Frever *testified* that Smith told him he entered the rear door, but now believes that Officer Frever was mistaken. [DE 99 at 3]. In any case, the officers themselves did not leave the car to examine the house because they feared it would jeopardize the investigation. They took a photograph of the home from the alleyway, but could not find any address numbers. After Smith was driven through the alley and identified the house, he was taken in for a taped interview, at which time he was given his *Miranda* rights. He confirmed all of the information again during that interview. After the tape stopped rolling on the interview, Smith told Detective Drake that he obtained the drugs from an individual named "O" when he entered the house. [DE 32-5 at 3].

Officer Frever and an Officer Legros appeared with the prosecutor in front of a judge to seek a search warrant for the two-story tan house in the alleyway. Officer Frever testified as to the history of the investigation and described the structure in question as "a two-story, tan-sided structure that

3

sits on the same lot" behind 1105 or 1007 Washington Street. He testified that the house was surrounded by a fence and that Mr. Smith had confirmed that he entered the house to obtain the cocaine for the controlled transactions. Officer Frever also testified that Smith told him he had been entering the house through the rear door facing the alley, a statement which may have been inaccurate. Officer Legros, in turn, testified that the CIs had reported Omar Lewis was distributing cocaine and cocaine base from his residence. A warrant was issued based on the officers' testimony. Officers executing the warrant found cocaine base, packaging materials and a firearm in the residence.

**DISCUSSION**

"A defendant seeking to suppress evidence bears the burden of making a prima facie showing of illegality." *United States v. Evans*, 27 F.3d 1219, 1228 (7th Cir. 1994) (citing *United States v. Randle*, 966 F.2d 1209, 1212 (7th Cir. 1992)); *see also United States v. Kiner*, No. 3:10-CR-87, 2011 WL 98563 at *2 (N.D. Ind. Jan. 12, 2011). Lewis raises several arguments in his motion in an attempt to discharge that burden. The court addresses them in the following order: (1) general defects in the investigative process (this refers to Lewis's claim that the targets were "paid" with crack cocaine); (2) problems with the warrant (this includes the *Franks* issues and the argument that the warrant was not signed); (3) violations of third party constitutional rights (the argument that Daryl Smith was never read his *Miranda* rights); and (4) allegations of a warrantless search. None of these arguments warrants suppression, and Lewis's motion must be denied.

**I.      General Defects in the Investigative Process**

Lewis's first argument rests on his assertion that "the targets were paid with drugs." The "targets," in the parlance of this case, were Darwin Van and Daryl Smith. They were the drug runners who took the money from the undercover officer and the confidential informant, went up

4

the alleyway, and returned with drugs. It is undisputed that, in the transactions in which a target made a deal with the CI out of the undercover officer's vehicle, the target took an "appreciation piece" from the drugs that were transferred. Officer Frever's investigative reports confirm as much.[1] From this, Lewis concludes that "[t]he Constitutional prohibition against unreasonable searches and seizures provides protection from such acts by government agents[.]" [DE 96 at 5].

The court infers that Lewis is attempting to make a Fourth Amendment argument. But Lewis offers no legal support whatsoever for his position, and his Fourth Amendment argument is frivolous. "Any Fourth Amendment inquiry necessarily begins with a determination of whether a search or seizure actually occurred." *Carlson v. Bukovic*, 621 F.3d 610, 618 (7th Cir. 2010). The CI breaking off an appreciation piece for the drug runner was in no remotely conceivable way a "search" or a "seizure." *See Kyllo v. United States*, 533 U.S. 27, 33 (2001) ("a Fourth Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable."); *Carlson*, 621 F.3d at 618 (question with respect to seizure inquiry has traditionally been whether the person believed they were "free to leave"). In fact, those concepts are so completely unrelated to what happened here that it is difficult to even discuss them together. No unreasonable search or seizure occurred when these drugs changed hands. But even aside from all that, it is difficult to see what effect any of this has on the issuance of the warrant, which precipitated the search Lewis hopes to suppress. Whether Van and Smith were allowed to keep an appreciation piece or not, the drug transactions on which the warrant was based did actually happen, and Lewis does not dispute that fact. In short, none of Lewis's arguments pertaining to the drug buys raises an

---

[1] For example, during the May 5, 2011, buy from Darwin Van, Van brought the drugs back to the vehicle and handed them to the CI. Van then "advised the confidential informant to break [Van] a piece off the product for his payment[.]" [DE 96-1 at 9]. The process was similar in each of the buys for which the CI was present. No appreciation piece was transferred, obviously, during the buy in which only Officer Frever was present and Smith was arrested.

actionable Fourth Amendment issue.

Before moving on, Lewis also seems to make the slightly different argument that it was wrong for the warrant to be based on a transaction which was "unethical" in that an undercover police officer allowed a criminal to retain illegal drugs. Once again, he offers no legal authority, although he includes hazy references to the "Framers' intent" and to the general animating principles of the Constitution. The court assumes Lewis is referencing the line of cases which holds that an indictment should be dismissed if law enforcement conduct critical to its obtainment violated "'fundamental fairness, shocking to the universal sense of justice' mandated by the Due Process Clause of the Fifth Amendment." *United States v. Russell*, 411 U.S. 423, 431-32 (1973). Put another way, a conviction obtained through police conduct that "shocks the conscience" offends the Due Process Clause. *Rochin v. California*, 342 U.S. 165, 172-74 (1952). The question of whether government involvement in a criminal scheme rises to the level of a due process violation "turn[s] on the totality of the circumstances, with no single factor controlling." *United States v. Haimowitz*, 725 F.2d 1561, 1577 (11th Cir.), *cert. denied*, 469 U.S. 1071 (1984); *see also United States v. Tobias*, 662 F.2d 381, 387 (5th Cir. 1981), *cert. denied*, 457 U.S. 1108 (1982). The defense is only available in the "rarest and most outrageous circumstances." *Tobias*, 662 F.2d at 387. These are not the rarest and most outrageous circumstances. In *Rochin*, for example, one of the foundational cases in this line, police barged unannounced into the defendant's bedroom, attacked him when he tried to swallow two capsules, and dragged him to a hospital to forcibly pump his stomach. This case is not like that. In its response, the government rightly points out that the work a confidential informant does, by its very nature, sometimes requires the informant to participate in (or at least tolerate) criminal activity. A confidential informant who constantly distanced himself from unlawful conduct would have a very difficult time ingratiating himself into the criminal circles on which he was

expected to inform. What this CI did is a common and accepted, if regrettable, element of modern police work. No due process argument is available to Lewis.

## II. Problems with the Warrant

Lewis argues that the warrant itself was flawed in two ways. First, he argues that various statements by the officers who testified before the issuing judge were intentionally false and misleading. This is, essentially, the *Franks* issue already decided against Lewis on the first motion to suppress. Second, he argues that the warrant was invalid because it was not signed.

### A. *Franks* Issues

Lewis's first challenge to the warrant concerns his assertion that the officers intentionally misled the issuing judge. "There is, of course, a presumption of validity with respect to the affidavit [or testimony] supporting a search warrant." *Franks v. Delaware*, 438 U.S. 154, 171 (1978). Nevertheless, "where the defendant makes a *substantial preliminary showing* that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Id*. at 155-156 (emphasis added). As explained by the Seventh Circuit in *United States v. Swanson*, to obtain a *Franks* hearing, the Defendant has to "establish by a substantial preliminary showing that: (1) the affidavit contained a false material statement; (2) the affiant made the false statement intentionally, or with reckless disregard to the truth; and (3) the false statement is necessary to support the finding of probable cause." 210 F.3d 788, 789-90 (7th Cir. 2000) (internal quotations omitted).

The defendant's burden in the "preliminary showing" phase is significant. "To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Franks*, 438 U.S. at 171. "There must be allegations of

deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." *Id*. "They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons." *Id*. "Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." *Id*. In other words, a defendant's request for a *Franks* hearing must be supported by real evidence. Conclusory, self-serving statements are not enough. *United States v. Johnson*, 580 F.3d 666, 671 (7th Cir. 2009).

Lewis claims the following portions of the testimony at the warrant hearing were intentionally misleading:

(1) A variety of statements (statements 1, 3 (partially), 5, and 6 as related by Lewis at DE 96 at 7-9) made by Officer Frever which Lewis believes conveyed the impression that Frever himself did things or personally saw Smith do things, when really Smith had just related his actions back to the officers;

(2) Statements related to "the back door issue" (statements 2, 3, and 4); and

(3) Statements relating to the nature of the transactions with the targets (statements 7 and 8).

The court addresses each group of statements in turn, applying the three-part *Swanson/Franks* test as necessary. Not one warrants a *Franks* hearing.

### 1. Statements which allegedly convey the wrong impression.

Lewis cites several statements from the warrant hearing transcript which he believes show Officer Frever "constantly and intentionally misleading the court by testifying as if he has witnessed Mr. Smith or Mr. Van enter the defendants home," and more, when in reality Officer Frever was just relating information Smith told to him. [DE 96 at 8]. This argument does not entitle Lewis to a *Franks* hearing. First, Lewis is simply wrong about the impression given by Officer Frever's testimony. Officer Frever made it extremely clear that the target – not him, not the confidential informant, but the actual source – was the one who went into the structure and obtained the drugs

8

and came back. [DE 32-4 at 4-6]. And there is not a shadow of a doubt that the issuing judge understood exactly what Officer Frever meant. In fact, the judge *confirmed* with Officer Frever, on the record, that the information about transactions inside the dwelling was "information [Officer Frever] received back from the confidential sources[.]" [DE 32-4 at 4-5]. This is not a *Franks* determination. This is a simple acknowledgment that there is no evidentiary basis for the defendant's factual position.

Second, even if the court *were* to conclude that there was some confusion about what Officer Frever did or saw himself and what was relayed to him by the targets, Lewis offers no reason why that would affect the integrity of the warrant. The Seventh Circuit has repeatedly held that a search warrant need not be based on first-hand observations. *See United States v. Hollingsworth*, 495 F.3d 795, 805 (7th Cir. 2007); *United States v. Lloyd*, 71 F.3d 1256, 1263 (7th Cir. 1995); *United States v. Chapman*, 954 F.2d 1352, 1370 (7th Cir. 1992). To the contrary, "hearsay may be the basis for issuance of [a] warrant 'so long as there [is] a substantial basis for crediting the hearsay.'" *United States v. Ventresca*, 380 U.S. 102, 108 (1965) (quoting *Jones v. United States*, 362 U.S. 257 at 272 (1960)). "[A]n affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant,' so long as the magistrate is 'informed of some of the underlying circumstances' supporting the affiant's conclusions and his belief that any informant involved 'whose identity need not be disclosed was 'credible' or his information 'reliable.'" *Id*. (quoting *Aguilar v. State of Texas*, 378 U.S. 108, 114 (1964)). In its previous order denying Lewis's motion to suppress, this court found that those standards were met with respect to the testimony underlying this warrant. That ruling still stands. Even if Lewis is right about the alleged first person-third person confusion, the warrant would not be defective.

That makes two reasons why this argument fails, but there is also a third. Lewis has not

shown – has not even argued, actually – that the information in question was *false*. That amounts to a total failure to meet the first prong of the *Franks* test, if he could even make it that far. In short, this argument does not support invalidating the warrant or suppressing any evidence found as a result of it.

### 2. Statements related to the "back door issue."

Officer Frever told the issuing judge that Smith used the back door to enter the residence. The evidence shows undisputably that Smith did not use the back door, because the back door was sealed at the time. But it is unclear, nonetheless, whether or not Smith *told* the officers he used the back door. If so, he would have said that during the drive through the alleyway, between the video-recording of the final buy and the video-recording of Smith's custodial interrogation. It was therefore in a recording gap. Lewis thinks Smith *did* tell officers he used the rear door; the government believes he did not. Neither side has any evidence one way or the other.

If Lewis is right, he loses on the issue, and in short order. If Smith told officers he used the rear door and Officer Frever relied on that statement, then – even if the statement was actually false – Officer Frever did not make a false statement to the issuing judge "intentionally." *Swanson*, 210 F.3d at 789-90. But even if the government is right, and Smith never did tell the officers he used the rear door, Lewis is not entitled to a *Franks* hearing. This court held as much in its earlier opinion when it was confronted with the exact same argument:

> [T]o merit a *Franks* hearing, Mr. Lewis would have to make a substantial preliminary showing that the false statement in question was made knowingly and intentionally, or with reckless disregard for the truth, and that it was necessary to the finding of probable cause. 438 U.S. at 155-156. Mr. Lewis has not done so. Beyond conclusory allegations, he does nothing to show that the statement was a lie or made with reckless disregard for the truth as opposed to the product of negligence or innocent mistake. *See United States v. Butler*, 594 F.3d 955 (8th Cir. 2010). Furthermore, probable cause to issue the warrant is not defeated because of the falsity of this one particular representation.

[DE 34 at 5]. The last point is particularly salient. Probable cause to search the residence in question was based on evidence that the targets obtained drugs from that residence. It is not as though the identification of the correct house hinged entirely on which door was used by the drug runner. Even without that information, the officers had identified a "two story, tan sided, structure located in the lot behind 1105/1107 Washington . . . between 11th and Green, Michigan City, LaPorte County, Indiana[.]" [DE 32-3]. "The test for determining whether a search warrant describes the premises to be searched with sufficient particularity is not whether the description is technically accurate in every detail, but rather whether the description is sufficient to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premises might be mistakenly searched." *United States v. Durk*, 149 F.3d 464, 465 (6th Cir. 1998) (internal citations omitted). Even without any mention of a rear door, the information Officer Frever provided to the issuing judge meets that test. Accordingly, the back door statements were not "necessary to support the finding of probable cause," and this issue does not entitle Lewis to a *Franks* hearing.

### 3. Statements relating to the nature of the transactions with the targets.

Lewis's final *Franks* arguments rest on two statements which he thinks mischaracterize the nature of the transactions between Officer Frever, the CI, and the targets. The first statement he attacks is a question by the prosecutor, not a statement by an officer. The prosecutor asked Detective Legros a question in which he characterized the drug buys as "transactions that were done on that house." [DE 32-4 at 11]. Lewis takes offense because, in his opinion, the transactions were not done "on that house." They were done in the undercover officer's car. In reality, the transactions obviously involved both locations. But this is not a *Franks* issue at all. There was nothing false or misleading about the shorthand characterization of the deal, and the layout of the transactions had

11

already been made abundantly clear during Officer Frever's testimony. There is no chance the issuing judge was misled.

The final statement challenged by Lewis was Detective Legros's assertion that confidential informants who had given him information pertaining to this case had been truthful and reliable in the past. [DE 32-4]. Lewis appears to mistakenly think Detective Legros was referring to Smith and Van when he talked about the reliability of his CIs. But Smith and Van were not CIs. They were targets. When the entire transcript is read, rather than just single lines, the meaning of Detective Legros's statement becomes clear. Moments earlier, he had testified that various confidential informants had told him over the course of his investigation that Omar Lewis was dealing drugs from the residence. [DE 32-4 at 9-10]. The judge then interjected to ask when those informants gave Detective Legros their information. He answered that question, and a follow-up from the prosecutor. Next, the prosecutor returned to the previous topic of discussion, by asking, "generally speaking . . . have you used these CIs in the past? Have they been truthful and reliable in the past with the information they provided you[?]" [DE 32-4 at 11]. Clearly, the prosecutor was asking about the CIs who had given Detective Legros the information about Lewis dealing drugs at the residence, *not* about the targets (who were not CIs in the first place, so Lewis's interpretation makes no sense). This court does not have complete information as to the reliability, or even identity, of all of those confidential informants, but it is not needed. Lewis has not made a "substantial preliminary showing" that those CIs were not reliable, and that Detective Legros was lying when he said they were. In short, Lewis is not entitled to a hearing on any of the *Franks* issues he has attempted to raise.

**B.      Warrant Signature**

Lewis argues that the search warrant is invalid because it was not signed by a judge. The

government responds that the defendant's copy may be unsigned, but that the issuing judge did sign and execute the search warrant on May 6, 2011. Neither side has presented the signed search warrant to the court. Regardless, this claim does not warrant suppression. "[A]s long as the magistrate in fact performs the substantive tasks of determining probable cause and authorizing the issuance of the warrant, the [Fourth] [A]mendment is satisfied." *United States v. Turner*, 558 F.2d 46, 50 (2d Cir. 1977). That undeniably did occur here. Moreover, even in those jurisdictions where an unsigned warrant *is* presumptively invalid – such as the state of Michigan, for example, *see Brown and Ball v. Wassus*, 234 F.3d 1267 (6th Cir. 2000) (commenting on Michigan law) – "[e]vidence that a judge made a determination that a search was warranted, and intended to issue the warrant before the search," rebuts that presumption. *Id*. The transcript of the warrant hearing states that "[b]ased on the evidence presented, there is the finding of probable cause for the issuance of a search warrant for a two-story dwelling, tan-sided structure, located in the lot between 1105 and 1007 Washington, rear door entrance facing alley between 11th and Green Street, Michigan City, for the items articulated in the search warrant. Basically, property and evidence of the sale or possession of narcotics or controlled substances." [DE 32-4 at 13]. That language is more than clear enough.

### III. Violations of Third Parties' Constitutional Rights

Lewis contends that the information police received from Smith during the drive through the alleyway – and which served as an important part of the basis for the warrant – should be suppressed because Smith was not read his *Miranda* rights until he was interviewed at the police station later that day. This claim is frivolous. "For nearly forty years, the Supreme Court has unwaveringly required the proponent of a motion to suppress to 'assert[ ] his own legal rights and interests rather than basing his claim for relief upon the rights of third parties.'" *United States v. Stearn*, 597 F.3d 540, 552 (3d Cir. 2010) (quoting *Rakas v. Illinois*, 439 U.S. 128, 139 (1978)); *see also United States*

*v. Chiavola*, 744 F.2d 1271, 1273 (7th Cir. 1984) ("Generally, individuals not personally the victims of illegal government activity cannot assert the constitutional rights of others"). "This is black-letter law." 597 F.3d at 552. In other words, Lewis cannot suppress evidence in *his* trial solely on the basis that Daryl Smith's rights may have been violated when it was obtained.

## IV. Alleged Warrantless Search

In what is arguably the most confusing part of his motion, Lewis claims that the police conducted a warrantless search of his residence. He claims Detective Legros unilaterally decided that "sufficient probable cause existed to conduct a warrantless entry to the defendants [*sic*] residence[,]" and led a group of officers into the home. [DE 96 at 13]. Lewis's reply brief develops the claim further. He notes, correctly, that the transcript of the warrant hearing shows the hearing concluded at 5:40 p.m., but he believes that he has police reports showing his residence was entered at 5:30 p.m., which could therefore have been before the warrant was issued. Oddly, Lewis did not provide those police reports to the court.[2] More importantly, however, it is physically impossible for his theory to be true. Detective Legros – whom Lewis claims led the warrantless foray into his home [DE 96 at 13] – was, in fact, the last witness on the stand at the warrant hearing. The transcript clearly shows as much. [DE 32-4 at 9]. He was on the stand right up to the end. [DE 32-4 at 13]. It would therefore have been impossible for Detective Legros to lead a search of the defendant's home *before* the warrant was issued, since he was in the physical presence of the issuing judge when the judge found probable cause. Even assuming that the police reports Lewis cites (but did not submit) exist and say what he claims they say, the discrepancy must be chalked up to poor timekeeping. There was clearly only one search of the home conducted, and it happened after the warrant was

---

[2] This is despite the fact that Lewis's attorney <u>did</u> include every exhibit Lewis requested in the motion, which the court has independently confirmed. [DE98].

issued.

## CONCLUSION

Lewis makes a few other points in his brief, but they do not warrant extended discussion. For the most part, he attacks the credibility of Smith and Van as witnesses. That may be a compelling argument at trial, but it is irrelevant here. The judge who issued the warrant already made the requisite credibility determinations when he found probable cause, and while Lewis is free to personally disagree, the judge's determinations will stand. The validity of the warrant and the search in this case has now been exhaustively litigated over the course of almost a calendar year and two fully-briefed motions. Lewis has had a full and fair chance to air his position, and, after a long and repetitive examination of the record, this court is thoroughly convinced that the warrant and search were not constitutionally defective. It is time for the case to move towards trial. The motion to suppress [DE 96 and DE 83] is **DENIED**. The court will set a trial date within the time remaining on the speedy trial clock.

SO ORDERED.

ENTERED: November 19, 2012

/s/ JON E. DEGUILIO
Judge
United States District Court